Pedro Bernal (SBN 284444)
BERNAL LAW, APLC
750 B Street, Suite 1710
San Diego, CA 92101
Tel.: (619) 736-9092
Fax: (619) 694-4718
Email: pb@bernal-law.com

Attorney for Defendant
DANIEL RIKKELS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.: 3:25-CR-04276-H |
| Plaintiff, | ) |
| | ) **DEFENDANT DANIEL RIKKEL'S** |
| v. | ) **NOTICE OF MOTION AND MOTION TO** |
| | ) **DISMISS THE INDICTMENT (F.R.C.P.** |
| DANIEL RIKKELS, | ) **12(B))** |
| | ) |
| Defendant, | ) **[REQUEST FOR ORAL ARGUMENT]** |
| | ) |
| | ) Date:    March 30, 2026 |
| | ) Time:   10:00 a.m. |
| | ) |
| | ) The Honorable Marilyn L. Huff |
| | ) |
| | ) |
| | ) |

On the date and time set forth above, Defendant DANIEL RIKKELS (Mr. Rikkels), by and through his counsel, Pedro Bernal Bilse, will move this Court to dismiss the Indictment pursuant to Rule 12(B) of the Federal Rules of Criminal Procedure.

-1-

## I.     MOTION TO DISMISS THE INDICTMENT

Defendant Daniel Rikkels (Mr. Rikkels) hereby moves this Court to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(B). *See* Indictment (ECF 1). Specifically, Mr. Rikkels moves this Court to (1) dismiss Count 1 for failure to allege an agreement concerning the substantive charges, an essential element of the crime; (2) dismiss Counts 2 through 7 for failure to allege an essential element of Wire Fraud; (3) dismiss Counts 8 through 12 for failure to allege essential elements of Bribery; (4) dismiss Counts 13-17 because the Government failed to allege an essential element of the charged offense; (5) dismiss counts 18-22, because the Government failed to allege essential elements of Laundering Monetary Instruments; and (6) dismiss Counts 23-33, because the Government failed to allege the essential elements of Money Laundering. This motion is supported by the memorandum of points and authorities below.

## II.     BACKGROUND

Mr. Rikkels is a veteran of the United States Armed Forces. Mr. Rikkels served in a Military Intelligence Division of the United States Army from 1993-2000, until a chronic spine injury forced him to retire. In 2001, Mr. Rikkels was hired by the Department of Veteran's Affairs ("VA"). He first worked as a Veteran's Service Representative, helping veterans navigate the VA's benefit process. In 2009, Mr. Rikkels transferred to San Diego to serve as a Rating Specialist until his retirement in June 2025.

In November 2025, Mr. Rikkels was charged in a 33-count Indictment alleging, in Count 1, Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1349, in Counts 2-7, Wire Fraud under 18 U.S.C. § 1343, in Counts 8-12, Bribery of a Public Official under 18 U.S.C. § 201(b)(2)(A) and (B), in Counts 13-17, Willfully Engaging in Acts Affecting a Personal Financial Interest under 18 U.S.C. §§ 208(a) and 216 (a)(2), in Counts 18-22, Laundering of Monetary Instruments under 18 U.S.C. § 1956 (a)(1)(B), and in Counts 23-33, Money Laundering under 18 U.S.C. 1957. *See* Indictment (ECF No. 1).

/ / /

### III.     GOVERNMENT'S THEORY OF THE CASE

The Indictment alleges, in essence, that Mr. Rikkels used his position as a VA Rating Specialist to solicit and accept payments from veterans in exchange for assisting them in submitting and obtaining approval of VA disability claims. *See* Indictment (ECF No. 1) at ¶¶ 11-12. The Indictment further alleges that Mr. Rikkels negotiated payment from the veterans up front, often in an amount proportional to the final disability rating and backpay they were anticipated to receive. *Id.* at ¶ 12b. The Indictment alleges that Mr. Rikkels instructed veterans to provide false or exaggerated information to support their claims and that he used his official position to select and approve these claims. *Id.* at ¶ 12e. According to the Indictment, Mr. Rikkels used his official position to select and approve these claims from the National Work Queue. *Id.* at ¶ 4. Once the claims were final, Mr. Rikkels would demand payment from veterans and the veterans would then pay Mr. Rikkels. *Id.* at ¶ 12j.

### IV.     SUMMARY OF DEFENDANT'S ARGUMENT

The 33-Count Indictment is insufficient on its face to support each element of the charges contained therein. "An indictment that fails to allege every essential element of the charged offense fails to invoke the jurisdiction of [the] Court and must be dismissed. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). Although the government included a lengthy introduction to the allegations against Mr. Rikkels, including the "Standards of Ethical Conduct" related to Mr. Rikkels employment, and the Government's theory of Mr. Rikkels' scheme, they failed to allege facts that would support each element of the charged crimes. In Counts 1-7, for which the remaining counts in the Indictment are predicated, the Government failed to allege or identify the "intended victim" of the charged fraud. The Indictment also fails to properly allege who the co-conspirators are. The Indictment also does not allege that the statements Mr. Rikkels made via email to the veterans were *material* in the VA's decision to grant or deny benefits on the relevant cases. Additionally, the Indictment never alleges that the veterans were not entitled to the benefits they received. As laid out more fully below, the Government's charges in the

Indictment present a house of cards predicated on conflicting theories of the case, resulting in an Indictment that fails to allege the material elements of each of the charged crimes.

The Indictment against Mr. Rikkels does not meet the standard set forth by the law to adequately apprise him of the charged crimes so that he can prepare his defense, and thus the Indictment should be dismissed in its entirety.

## V.    POINTS AND AUTHORITIES

An indictment must allege the elements of the offense(s) charged, including judicially required elements. *See United States v. Hess*, 124 U.S. 483 (1988); *Stirone v. United States*, 361 U.S. 212, 217 (1960). *United States v. Soriano*, 880 F.2d192, 198 (9th Cir. 1989) ("[I]mplied, necessary elements, not present in the statutory language must be included in the indictment."); *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (failure to charge element is structural error, this not subject to plain error review);  *United States v. DuBo,* 186 F.3d 1177, 1179 (9th Cir. 1999) (implied element must be charged in indictment).  "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002).  A valid indictment must satisfy two constitutional requirements derived from the Fifth and Sixth Amendments: (1) it must contain the elements of the offense intended to be charged; and (2) it must sufficiently apprise the defendant of what he must be prepared to meet at trial. *Russell v. United States*, 369 U.S. 749, 763-64 (1962). An indictment that merely recites statutory language without informing the defendant what he has in fact allegedly done is constitutionally deficient. *Id.* at 765-66.

Under Rule 12(B) of the FRCP, a defendant may move to dismiss an indictment if the charging document contains certain defects, including if it lacks specificity and if it fails to state an offense.  FRCP, Rule 12(B)(iii) and (v). In evaluating such a motion, the court must accept the allegations in the indictment as true and analyze whether a cognizable offense has been charged.  *United States v. Wolfenbarger*, 464 F.Supp. 3d 1147, 1150 (2020). The court is bound by the "four corners" of the indictment and may not

consider evidence outside of it.  *Id.* A motion to dismiss under Rule 12 (B) is generally appropriate when it involves questions of law rather than fact. For example, the court may resolve legal issues such as jurisdiction, duplicity, or lack of specificity in the indictment, but it cannot assess the sufficiency of the government's evidence to prove a material element of the offense.  *Id.*

In *United States v. Cecil*, the Ninth Circuit invalidated an indictment that tracked the statutory language but failed to include sufficient factual detail.  *United States v. Cecil*, 608 F.2d 1294, 1297 (1979). The court emphasized that the indictment lacked "factual particularity," such as specific facts or circumstances about the conspiracy within a clear time frame.  *Id.*  The court held that such deficiencies deprived the defendants of the ability to prepare a defense and ensured that they were prosecuted on facts presented to the grand jury.  *Id.*

**A.    Count 1 Fails to Properly Allege a Conspiracy to Commit Wire Fraud**

This Court should dismiss Count 1, the Conspiracy to Commit Wire Fraud count, as it lacks specificity and fails to properly allege facts sufficient to support a charge of conspiracy to commit wire fraud.   18 U.S.C.  § 1349 criminalizes an "attempt or conspir[acy] to commit" wire fraud.  18 U.S.C. § 1349.  A conspiracy requires, at minimum, two parties who have reached a mutual agreement to pursue an unlawful objective.  *United States v. Shabani*, 513 U.S. 10, 16 (1994).  And to convict of a conspiracy offense, and thus to charge a conspiracy offense, there must be an allegation in the indictment and a finding at trial with respect to the elements of the object of the conspiracy.  *See United States v. Alghazhouli*, 517 F.3d 1179, 1189 (9th Cir. 2008).  The agreement itself is the crime; but there must be an agreement.

Here, beyond the mere assertion that Mr. Rikkels "conspired" with others is insufficient to allege conspiracy. As argued in more detail below, the Government has failed to allege an intended victim in the charged substantive offenses of wire fraud and seems to present conflicting theories of the charges within the 4 corners of the Indictment. If the theory of the charged offenses is unclear, including ambiguity about the intended victim, there can be no agreement to pursue an "unlawful objective," as the agreed-upon

unlawful purpose in this Indictment remains a mystery. Notably, an agreement to violate ethical rules of conduct of one's employment does not form the basis of a cognizable federal charge. The Ninth Circuit has held that bare statutory language alleging a "conspiracy" without factual description of the agreement is insufficient under *Russell*. *United States v. Cecil*, 608 F.2d 1294, 1296-97 (9th Cir. 1979). The Indictment must describe "the nature of the agreement" with sufficient particularity to enable the defendant to prepare a defense and to protect against double jeopardy. *Id.* Where, as here, all alleged co-conspirators are unidentified, no specific agreement is described, and the supposed co-conspirators are not charged, the conspiracy count fails to state a cognizable offense.

In the Indictment and "introductory allegations," the Government seems to be intimating that the co-conspirators were the veterans pursuing claims with the VA, and the wire transmissions constituting fraud AND evidence of the alleged conspiracy were the messages from Mr. Rikkels to the veterans. However, this is precisely how the Indictment is flawed. Although it had ample opportunity, the Government never used language in this Indictment to indicate that the intended victim of the fraud was the VA or the United States government. In fact, the Government explicitly described the "scheme to defraud" in the Indictment as Mr. Rikkels' plan to "induce veterans to pay money to defendant to obtain benefits by means of false pretenses." *See* Indictment at ¶ 16. If the intended victims were in fact the veterans, as claimed by the Government, they did not sufficiently allege facts in Count 1 of the Indictment to support their theory of "co-conspirators" engaging in an "agreement" to pursue the unlawful purpose, and thus the count should be dismissed.

**B.**      **Counts 2-7 Fail to Charge the Requisite Elements of Wire Fraud and Lack Specificity**

The Indictment in this case fails to charge the requisite elements of the offense of wire fraud and lacks specificity as to the intended victim and therefore the alleged scheme. Accordingly, Counts 2-7 should be dismissed under Rule 12(b)(B)(iii) and (v). In counts 2-7, in various paragraphs, the Indictment alleges that Mr. Rikkels acted with "the intent to defraud," however at no time did the sentence include

"the intent to defraud [a person or entity]." This is notable and forms the basis of Mr. Rikkels' motion to dismiss these counts, as he is unable to adequately understand the charges against him and prepare a defense for trial.  "The Indictment's bare recitation that Defendant acted 'with intent to defraud' — without identifying who was to be defrauded, of what, or by what specific false statement — is precisely the kind of naked statutory recitation the Supreme Court condemned in *Russell*.  An indictment 'must do more than simply repeat the language of the criminal statute.'  *Russell*, 369 U.S. at 765.  Where the charging document tracks the statute but supplies no factual content establishing the element, it fails to state an offense."

The Indictment goes on to allege that the "scheme to defraud," was to "induce veterans to pay money to defendant to obtain benefits by means of materially false and fraudulent pretenses." However, the indictment does not allege a specific representation made to the veterans to "induce" them to pay money to Mr. Rikkels. In fact, we know nothing about the substance of their agreement. Therefore, we also cannot know, nor did the government allege, that these representations were "material" to the decision to pay Mr. Rikkels. Assuming the government included the most damning "wires" in their indictment, absolutely nothing in the alleged communications includes an agreement by Mr. Rikkels and anyone else or indicate that a substantial step was taken. Furthermore, these communications do not include any representations by Mr. Rikkels about a specific outcome, nor do they even indicate that the intended receivers of the communications were (1) veterans, (2) who had paid Mr. Rikkels, that (3) Mr. Rikkels had made specific representations to them, and that (4) the representations were false, and that (5) the recipients relied on those false representations in providing Mr. Rikkels with money. None of these messages are accompanied by an allegation that the veteran did not actually suffer from the conditions. The Government has charged the entire case based on the one-way email communication including the discussion of symptoms without alleging that the underlying conditions were fictitious, nor that the

receiver of the communications are the actual veterans who paid Mr. Rikkels.  This patently fails to state an offense under 18 U.S.C. § 1343.

The elements of wire fraud are: (1) proof of a scheme to defraud, (2) use of the wires to further the fraudulent scheme; and (3) specific intent to defraud."  *United States v. Sullivan*, 522 f3d 967, 974 (9th Cir. 2008).  To prove a "scheme to defraud" the jury must find that the defendant employed "material falsehoods."  *United States v. Lindsey*, 850 F.3rd 1009, 1013 (9th Cir. 2017).  In cases charging materially false statements to a government agency or officer, "a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed."  *United States v. Galecki*, 89 F.4th 713, 737 (9th. Cir. 2023).

In the Ninth Circuit, an indictment must contain the elements of the offense and "sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995). Where the indictment fails to allege an essential element of the charged offense, it fails to state an offense and must be dismissed. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The Ninth Circuit has held that wire fraud requires "the intent to deceive *and* cheat" — meaning the intent to deprive an identified victim of money or property through deception. *United States v. Miller*, 953 F.3d 1095, 1101-02 (9th Cir. 2020).  The Supreme Court in *Ciminelli v. United States*, 598 U.S. 306, 315 (2023), reaffirmed that wire fraud "prohibits only deceptive schemes to deprive [the victim] of money or property." Here, the Indictment seems to identify the veterans as the fraud victims but alleges no deception directed at them.  This is not a curable defect—it is the absence of the central element of the offense.

Alternatively, if the Government now argues that the true fraud victim was the VA or the United States—not the veterans as explicitly stated in Paragraph 16—that theory appears nowhere in the Indictment's charging language.  The government cannot redefine its fraud theory at trial. *Russell*, 369 U.S. at 768 (indictment cannot enable prosecution "to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal").

Wire fraud under 18 US.C. § 1343 requires a scheme to obtain money or property "by means of materially false and fraudulent pretenses, representations, and promises." 18 U.S.C. § 1343 (emphasis added). The materiality element requires that the alleged false statement be capable of influencing the decision of the intended victim. *Neder v. United States*, 527 U.S. 1, 16 (1999). Additionally, the Sixth Amendment requires that a defendant be informed of "the nature and cause of the accusation" against him. U.S. Const. Amend. VI. Mr. Rikkels cannot prepare a defense to wire fraud without knowing who was defrauded, and a defense with the veterans as the alleged victims is an entirely different defense than the United States or VA as the intended and alleged victim.

Furthermore, the Indictment uses three distinct words to describe Mr. Rikkels' conduct in coaching the veterans to submit claims to the VA that were: "false, misleading, and exaggerated." (Indictment ¶¶ 11, 13.). This goes to the heart of the argument above, that the Government's allegations describe the veterans' participation in Mr. Rikkels conduct as purported co-conspirators, however in the actual language of the charges, the government has alleged they are the intended victims. These assertions in the Indictment contradict each other. If the intended victims were the veterans being coached by Mr. Rikkels, the Government has not alleged or charged any materially false and fraudulent pretenses capable of influencing the decision of the intended victim.

Critically, the Indictment does not identify or allege a single veteran whose underlying medical condition was fabricated *as submitted* to the VA, and notably, the government did not charge "attempt" in this case. Although provided in its "introductory statement" about the government's theory of the case, the actual Indictment does not allege or identify a single claim that was approved for a condition the veteran did not actually have. It does not allege that any claim was subsequently reviewed and found to have been improperly granted. Every specific claim it references is identified by initials— with no allegation that those claims were medically unsupported, submitted to the VA, or whether they were falsely granted. Furthermore, there is no allegation or information included in the Indictment that Mr.

Rikkels (1) provided false information to an individual veteran, (2) on which that veteran relied in agreeing to provide money to Mr. Rikkels, (3) after which they then submitted a claim to the VA that was based on false information influenced by Mr. Rikkels, and that (4) the VA erroneously granted their benefits, after which (5) the veteran paid Mr. Rikkels based on the false pretenses. These are the elements necessary to allege to support an Indictment for wire fraud in this case, and the Government has failed to do so.

**C.      Counts 8-12 for Failure to Allege a Quid Pro Quo–A Necessary Element for Bribery**

Bribery under § 201(b)(2) requires a payment made "in return for" an official act—a specific quid pro quo.  *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999).  The Indictment alleges a causal relationship that is not shown by the evidence included in the Indictment. The emails and payments included in the Indictment indicate that veterans paid Rikkels, he "coached them" on their claims, and they paid him for services. There was not included in these messages any language to indicate a quid pro quo relationship *based on his duties as a Rating Specialist.*

After Mr. Rikkels retired from the VA on June 17, 2025, he "continued the activities alleged above with his existing veteran clients as well as new veteran clients."  Indictment ¶ 13.  If the conspiracy required Mr., Rikkels' position as a VA claims reviewer to function—the supposed quid pro quo at the heart of the scheme—then his continued operation of the identical business after retirement demonstrates that the coaching business was wholly independent of any governmental function, undermining the premise that the veterans conspired with him to exploit his official position.

If Mr. Rikkels continued receiving payments for the identical services after he no longer held any government position and could perform no official act, the post-retirement payments are structurally indistinguishable from the pre-retirement payments. The Government cannot simultaneously argue that pre-retirement payments were corrupt bribery and post-retirement payments for the identical services were something else.

The continuity of the business before and after retirement demonstrates that the veterans were paying Mr. Rikkels for his coaching services—not for the exercise of his official function. A payment structure that makes no distinction between a government employee and a retired civilian doing identical work is facially inconsistent with a quid pro quo bribery theory.

**D.    Counts 13-17 Fail to State the Offense of Conflict of Interest**

This Court should dismiss Counts 13-17 of the Indictment, which allege that Mr. Rikkels violated 18 U.S.C. § 208(a) by adjudicating veterans' disability benefits while knowingly having a financial interest in said claims. This is because, even assuming the allegations are true, Mr. Rikkels did not have a *pre-existing* financial interest in the outcome of the claims. The history and case law of 18 U.S.C. § 208(a) shows that this statute is geared more towards matters in which a government employee has a pre-existing financial interest (federal contracting, stocks, bidding, etc.), not in an alleged kickback or bribery scheme.

**1.    Overview of 18 U.S.C. § 208 (a)**

Under 18 U.S.C. § 208(a), it is unlawful for an executive branch employee to:

> "[P]articipate personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which, to his knowledge, he, his spouse, minor child, general partner, organization in which he is serving as officer, director, trustee, general partner or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest."

*See* 18 U.S.C. 208 (a).

**2.    The History and Purpose of § 208(a)**

The history of 18 U.S.C. § 208 (a) reveals that Congress intended to correct a fundamentally defective predecessor statute, which allowed public officials to engage in a large number of activities which were wholly incompatible with the duties of public office." *United States v. Selby*, 557 F.3d 968,

973. Congress sought to broaden the provision to "embrace any participation on behalf of the government in a matter in which the employee has an outside financial interest. *Id.*

### 3.    18 U.S.C. 208 (a) Contemplates Pre-Existing Financial Interests

The language and structure of 18 U.S.C. § 208 (a) indicate that it was designed to address situations where a government official has a pre-existing financial interest in a matter *before* participating in that matter. The statute prohibits participation in matters "in which" the official "has a financial interest." This phrasing suggest that the financial interest must exists independently of and prior to the official's participation in the matter. The statute's exemption provisions further support this interpretation. Under 18 U.S.C 208(b), financial interests that are "too remote or too inconsequential to affect the integrity of the services of the Government officers or employees." *See* 18 U.S.C. § 208 (b). This language contemplates financial interests that exist separately from the official action itself, not payments received specifically for taking official action. The statute's focus on pre-existing financial interests that might impair impartial judgment is distinct from bribery-like conduct where an official *creates a financial interest* through a corrupt agreement.

The conduct alleged against Mr. Rikkels—receiving payments in exchange for approving VA disability claims—is (arguably) more appropriately addressed under bribery statutes such as 18 U.S.C. § 201, not § 208(a). 18 U.S.C. § 201 specifically criminalizes situations where a public official "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for: being influenced in the performance of any official act." Interpreting § 208(a) to cover situations where an official accepts payments in exchange for official actions would largely duplicate the bribery statute, rendering § 201 superfluous in many cases. This interpretation would be contrary to the principle that statutes should be construed to give effect to each provision. Here, the financial interest only came into came into being when Mr. Rikkels was allegedly paid–not when he agreed to be paid.

**E.    Counts 18-22 Do Not Allege Any Facts Supporting Concealment Money Laundering**

This Court should dismiss Counts 18-22 of the Indictment, which allege that Mr. Rikkels violated Section 1956(a)(1)(B), as the Indictment fails to properly allege concealment money laundering.  18 U.S.C. § 1956(a)(1)(B) requires that the defendant conduct a financial transaction "knowing that the transaction is designed in whole or in part — (i) to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).  This concealment requirement demands a distinct intent to obscure the criminal origins of funds—separate from the underlying criminal intent.  *United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir. 1997).

The transactions charged in Counts 18-22 (Indictment ¶ 23, p. 12) allegedly occurred as follows:

Count 18: $11,375.00 electronic transfer from Fidelity Brokerage Account #4156 to Fidelity Brokerage Account #3995 (March 15, 2024)

Count 19: $2,400.00 electronic transfer from Navy Federal Credit Union Account #1997 to Fidelity Brokerage Account #3997 (July 1, 2024)

Count 20: $2,693.55 electronic transfer from Navy Federal Credit Union Account #1997 to Fidelity Brokerage Account #3998 (July 1, 2024)

Count 21: $2,555.00 electronic transfer from Navy Federal Credit Union Account #1997 to Fidelity Brokerage Account #3999 (July 1, 2024)

Count 22: $4,141.67 electronic transfer from Navy Federal Credit Union Account #1997 to Fidelity Brokerage Account #9569 (July 1, 2024)

Every one of these transactions is an electronic transfer between named, regulated, federally-supervised financial institutions—Navy Federal Credit Union and Fidelity Brokerage Services—conducted in Mr. Rikkels' own name, in his own accounts, fully traceable and fully reported.  These institutions file Currency Transaction Reports, Suspicious Activity Reports, and are subject to comprehensive Bank Secrecy Act oversight.  There is no allegation of nominee accounts, shell companies, third-party intermediaries, cash structuring, cryptocurrency conversion, offshore transfers, or any other mechanism traditionally associated with financial concealment.

Transferring money from a checking account to a brokerage account—both in one's own name, at regulated institutions—is the *opposite* of concealment. It is fully transparent, fully documented, and fully attributable to the account holder. The Indictment's assertion that these transactions were "designed... to conceal and disguise the nature, location, source, ownership, and control" of the funds (Indictment at ¶ 23) is a legal conclusion wholly unsupported by the factual allegations. *United States v. Fallon*, 61 F.4th 95, 108 (3d Cir. 2023) ("Congress did not enact money laundering statutes simply to add to the penalties for various crimes in which defendants make money"); *United States v. Cavalier*, 17 F.3d 90, 93 (5th Cir. 1994) (depositing funds in one's own bank account is insufficient to establish concealment laundering).

**F.      23-33 Fail to Allege the Requisite Intent for Money Laundering**

18 U.S.C. § 1957 prohibits knowingly engaging in a monetary transaction exceeding $10,000 derived from specified unlawful activity. *See* 18 U.S.C. § 1957. Unlike § 1956, § 1957 does not require concealment intent—but it does require that the defendant knew the property was derived from criminal activity. *United States v. Rybicki*, 354 F.3d 124, 143 (2d Cir. 2003). The Indictment charges Mr. Rikkels under § 1957 for transactions totaling millions of dollars (Counts 23-33, Indictment ¶¶ 12-13), concluding with a statutory recitation that the property was "criminally derived." However, the Government begins its Indictment with provisions from the CFR as if to indicate Rikkels knew his conduct constituted a crime, but that is not what it shows. Nowhere does the Indictment allege facts supporting the inference that Rikkels knew—at the time he conducted these transactions—that he knew they constituted the proceeds of a federal crime.

The Indictment's own narrative suggests Rikkels believed he was operating a [legitimate] consulting business, accepting payments from clients for services rendered. The Indictment acknowledges he was paying taxes on his income (¶ 12(k)), alleging he requested cash "to minimize what he would have to pay in taxes"). A person who pays taxes on income does not believe that income is criminally derived.

The Indictment's description of Rikkels' financial conduct is fully consistent with someone who believed —even if incorrectly—that his consulting business was lawful.  The government cannot satisfy the knowledge element of § 1957 through a bare legal conclusion.  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (indictment must allege facts supporting each essential element, not merely recite statutory language).  The absence of any factual allegation supporting the inference that Mr. Rikkels knew – at the time he conducted these transactions – that his consulting fees were criminally derived, is a fatal defect in Counts 23 through 33.  Accordingly, this Court should dismiss these counts.

**VI.    CONCLUSION**

Based on the foregoing, Mr. Rikkels respectfully requests this Court dismiss the Indictment in its entirety.

Respectfully submitted,

DATED:  March 16, 2026

/ s / *Pedro Bernal*

_____

Pedro Bernal Bilse
Attorney for DANIEL RIKKELS

**CERTIFICATE OF SERVICE**

Counsel for the Defendant certifies that the foregoing Motion to Dismiss the Indictment has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Joseph S. Smith and Daniel F. Casillas – Assistant United States Attorneys

Respectfully submitted,


DATED:  March 16, 2025          / s / *Pedro Bernal Bilse*

                                _____
                                Pedro Bernal Bilse
                                Attorney for DANIEL RIKKELS